**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| YASMEEN E. PUGH, Plaintiff, v. TESLA, Defendant. | Case No. 3:26-CV-00424-MMD-CLB **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] [ECF Nos. 1, 1-1] |

Before the Court is Plaintiff Yasmeen E. Pugh's ("Pugh"), application to proceed *in forma pauperis*, (ECF No. 1), and *pro se* civil rights complaint, (ECF No. 1-1). For the reasons stated below, the Court recommends that Pugh's *in forma pauperis* application, (ECF No. 1), be granted, and her complaint, (ECF No. 1-1), be dismissed with leave to amend.

## I. *IN FORMA PAUPERIS* APPLICATION

A person may be granted permission to proceed *in forma pauperis* ("IFP") if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable pay such fees or give security therefore. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include

---

1 This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavit [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

A review of the application to proceed IFP reveals Pugh cannot pay the filing fee; therefore, the Court recommends that the application be granted.

**II. SCREENING STANDARD**

Prior to ordering service on any Defendant, the Court is required to screen IFP complaint to determine whether dismissal is appropriate under certain circumstances. *See Lopez*, 203 F.3d at 1126 (noting the IFP statute at 28 U.S.C. § 1915(e)(2) requires a district court to dismiss an IFP complaint for the enumerated reasons). Such screening is required before a litigant proceeding IFP may proceed to serve a pleading. *Glick v. Edwards*, 803 F.3d 505, 507 (9th Cir. 2015).

"[T]he court shall dismiss the case at any time if the court determines that – (A) the allegations of poverty is untrue; or (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. When reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See, e.g., Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6)

standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The Court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in *pro se* complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotations marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of actions," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more. . . than. . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

## III. SCREENING OF COMPLAINT

Pugh alleges claims for violation of Title VII of the Civil Rights Act, although the exact causes of action are unclear. (*See* ECF No. 1-1.) In the section of the form complaint asking for the law or right violated, Pugh lists "Title VII discrimination race black" and then "Retaliation Civil Right Act Claim 42 USCS 1981." (*Id.* at 9.) Thus, the Court construes Pugh as raising a claim for racial discrimination and a claim for retaliation under Title VII.

### A. Racial Discrimination

Title VII permits a plaintiff to raise racial discrimination claims under multiple theories of liability: hostile work environment, disparate treatment, disparate impact, and retaliation. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (Hostile Work Environment); *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1224-28 (9th Cir. 2021) (Disparate Treatment, Disparate Impact); *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 800-01 (9th Cir. 2003) (Retaliation). Each theory must be raised independently. *See Swafford v. Int'l Bus. Machines Corp.*, 383 F. Supp. 3d 916, 925 (N.D. Cal. 2019) ("Not only is the title of the claim incomplete because it fails to mention the [correct statute], but also lumping all of these claims together into one cause of action is improper."); *Hayek v. HCAL, LLC*, No. 11-cv-608, 2011 WL 6819075, at *4 (S.D. Cal. Nov. 17, 2011) ("[W]hen the pleading reflects a jumble of legal causes of actions and theories that fails to give defendants fair notice of what the plaintiff's claims actually are and the grounds upon which they rests, the complaint does not meet the standards of Rules 8 or 12.").

Here, it is unclear the theory of liability under which Pugh is bringing the discrimination claim. In the complaint, Pugh alleges she was terminated by Tesla in June 2025, shortly after reporting workplace concerns on May 1, 2025. (ECF No. 1-1 at 9.) However, other than to state "race black" in the cause of action portion of the form complaint, Pugh does not otherwise mention race or any specific incidents related to race. (*See id.*) Pugh also submitted a declaration and other exhibits related to her complaint. (ECF No. 4.) Given the leeway accorded to *pro se* plaintiffs in construing the allegations in a complaint, the Court will incorporate the statements in Pugh's declaration into the complaint.[2] *Hughes*, 449 U.S. at 9. Among other allegations in the declaration,

---

[2] Pugh also submitted a manual filing, (ECF No. 7), "containing medical records and supporting documents relevant to the claims in this action." (ECF No. 6.) However, Pugh does not provide any citations to these documents in her complaint. (*See* ECF No. 1-1.) Despite the leeway given to *pro se* plaintiffs in construing the allegations in a complaint, the Court will not sift through voluminous manual filings to find documentation to support

Pugh explains that during a slowdown in work, she was assigned to work in another department. (ECF No. 4 at 2.) There, she observed a white female employee whispering to another employee about her, saying something to the effect of "I don't want to work with her." (*Id.*) Pugh alleges she had never worked with the white female employee before. (*Id.*) Pugh alleges she believes the comments were directed at her and related to her race, which made her uncomfortable and concerned about how she was being treated in the workplace. (*Id.*) Afterwards, Pugh informed her supervisor and requested that she not be assigned to work in that area again. (*Id.*)

Pugh's complaint also includes two pages that are titled "draft" complaint statements. (ECF No. 1-1 at 2-3.) These differ slightly in content from the handwritten portion of the complaint by including references to discrimination based on "leave-related issues and significant personal hardships." (*Id.*) Pugh alleges she was "dealing with family loss and domestic-violence-related leave circumstances." (*Id.*) To the extent Pugh seeks to raise a Title VII claim based on the "leave-related" discrimination, these allegations do not give rise to any claims under Title VII. Pugh does not allege that the discrimination based on her taking leave was because of her race, color, religion, sex, or national origin, and therefore she cannot establish a Title VII discrimination claim on these allegations. *Hawn*, 615 F.3d at 1156.

Pugh's declaration also includes allegations that she experienced unequal treatment regarding pay and advancement opportunities. (ECF No. 4 at 2.) Pugh alleges that despite working at Tesla for six years at $22 per hour, she observed newer employees being hired at significantly higher rates of pay, including $27 per hour. (*Id.*) She also alleges she was subjected to workplace bullying and harassment by a co-worker identified as Cedric. (*Id.*) Pugh alleges she raised these concerns to Human Resources but does not believe corrective action was taken. (*Id.*) Pugh alleges the

---

Pugh's claims for her. "Judges are not like pigs, hunting for truffles buried in the record." *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (citation modified) (quoting *Gross v. Cicero*, 619 F.3d 697, 702 (2010)). Consequently, the Court will not review those documents in screening this complaint.

workplace harassment eventually escalated into an incident outside of work, because of which Pugh was taken into custody and spent time in jail. (*Id.*) She also suffered injuries and attempted to return to work afterwards. (*Id.*) Pugh alleges the criminal charges were eventually dismissed. (*Id.*) Pugh also alleges that she suffers from asthma and respiratory issues and experienced difficulties obtaining workplace accommodation for her medical needs. (*Id.*) Again, these allegations are also insufficient because Pugh does not allege that the above conduct occurred because of her race, color, religion, sex, or national origin, and therefore she cannot establish a Title VII discrimination claim on these grounds. *Hawn*, 615 F.3d at 1156.

Pugh fails to include any allegations whatsoever as to whether similarly situated individuals outside of her protected class were "treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn*, 615 F.3d at 1156. Outside of stating that one female employee was white, Pugh does not mention the race of any other employees. (*See* ECF Nos. 1-1, 4.) Consequently, the Court finds that Pugh is alleging a claim for hostile work environment based on the comments of the white female employee because there are no allegations which could plausibly support a disparate treatment or disparate impact claim.

The Ninth Circuit has explained the criteria for a hostile work environment claim as follows:

> To establish a *prima facie* case for a hostile-work environment claim, [the plaintiff] must raise a triable issue of fact as to whether (1) the defendants subjected her to verbal or physical conduct based on her race [or gender]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

*Surrell v. Calif. Water Serv. Co.,* 518 F.3d 1097, 1108 (9th Cir.2008) (citing *Manatt,* 339 F.3d at 798). The determination of "whether an environment is 'hostile' or 'abusive' can only be determined by looking at all the circumstances." *Best v. California Dept. of Corrections,* 21 Fed.Appx. 553, 556 (9th Cir.2001). "These [circumstances] may include

the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.” *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). “Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the terms and conditions of employment.” *Id.* (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998); *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1463 (9th Cir. 1994)).

Construing Pugh’s complaint broadly, she sufficiently alleges she was subjected unwelcome to verbal conduct based on her gender. *Surrell*, 518 F.3d at 1108. However, the one incident of alleged racial discrimination is insufficient this claim because “simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the ‘terms and conditions of employment.’” *Best*, 21 Fed. Appx. at 556 (internal citation omitted). Thus, Pugh’s allegation of one instance of negative comments based on race are insufficient to support the hostile work environment discrimination claim.

Consequently, the Court recommends Pugh’s Title VII racial discrimination claim be dismissed without prejudice and with leave to amend, as Pugh could potentially amend her complaint to allege sufficient facts or an alternate cause of action under Title VII.

**B. Retaliation**

The Court will now address Pugh’s Title VII retaliation claim. Pugh alleges that on May 1, 2025, she reported workplace concerns to human resources. (ECF No. 1-1 at 9.) Shortly thereafter, Pugh alleges she was terminated for engaging in protected activity in violation of Title VII. (*Id.*) Pugh further “alleges a causal connection between the protected activity [and] the adverse employment actions.” (*Id.*)

Title VII prohibits retaliation “because [an employee] has opposed any practice made an unlawful employment practice *by this subchapter*, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing *under this subchapter*." 42 U.S.C.A. § 2000e-3(a) (emphasis added). Thus, it is unlawful for an employer to discriminate against an employee for opposing actions that constitute discrimination under Title VII. *Id.* To state a retaliation claim under Title VII, a plaintiff must allege that: (1) she engaged in a protected act; (2) she suffered some sort of adverse employment action; and (3) there was a causal connection between her protected action and the adverse act. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093-94 (9th Cir. 2008). The Ninth Circuit defines "adverse employment action" as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray*, 217 F.3d at 1242-43. But-for causation is required to satisfy the third prong. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

"Protected activities" under Title VII include opposing acts by one's employer that constitute unlawful discrimination under Title VII. *Id.* at 347; 42 U.S.C. 2000e-3(a). They also include making informal complaints to one's supervisor. *Ray v. Henderson*, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000). "When an employee protests the actions of a supervisor, such opposition is a 'protected activity.'" *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). "[I]nternal complaints constitute protected activity when a reasonable person would believe the conduct the complaint reports violates Title VII." *E.E.O.C. v. Tesla, Inc.*, 727 F. Supp. 3d 875, 893-94 (N.D. Cal. 2024) (citing *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 963-64 (9th Cir. 2009)); *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009); *see Ray*, 217 F.3d at 1240 (holding that the plaintiff "engaged in protected activities when he complained of the treatment of women . . . both informally and formally).

Here, Pugh alleges she was retaliated against because she was terminated in June 2025, shortly after she reported workplace concerns to Human Resources on May 1, 2025. (ECF No. 1-1 at 9-10.) As explained in the discussion of the racial discrimination claim above, Pugh alleges she complained about unequal pay and advancement opportunities, workplace bullying and harassment, and one instance where a white

female employee made a comment Pugh believes was about her race. (ECF No. 4 at 2.) These are not sufficient allegations to show that she complained about conduct that constitutes discrimination under *Title VII* specifically. *Tesla, Inc.*, 727 F. Supp. 3d at 893-94 ("[I]nternal complaints constitute protected activity when a reasonable person would believe the conduct the complaint reports *violates Title VII*." (emphasis added)). Pugh does not allege that the unequal pay and advancement opportunities, the bullying, or harassment were because of race. (*See* ECF Nos. 1-1, 4.) Additionally, the single incident of a white female employee making comments that Pugh alleged was because of race is insufficient to support a discrimination claim under Title VII. *Faragher*, 524 U.S. at 788.

Consequently, Pugh has not sufficiently alleged that she engaged in protected activity because she failed to include any allegations showing she was complaining about actions that constitute discrimination under Title VII. 42 U.S.C. 2000e-3(a). Therefore, the Court recommends that Pugh's Title VII retaliation claim be dismissed without prejudice and with leave to amend.

**C. Leave to Amend**

Based on the discussion above, the Court therefore recommends that Pugh's entire complaint be dismissed without prejudice and with leave to amend for failure to comply with the Federal Rules of Civil Procedure. If Pugh chooses to file a first amended complaint, she is advised that a first amended complaint supersedes (replaces) the complaint and, thus, the first amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"). Any allegations, parties, or requests for relief from prior papers that are not carried forward will no longer be before the court. Pugh should clearly title the amended pleading as "First Amended Complaint." For <u>each</u> Defendant and <u>each</u> claim, she must allege true <u>facts</u> sufficient to show that the Defendant violated her rights.

The Court notes that if Pugh chooses to file a first amended complaint curing the deficiencies, as outlined in this order, Pugh should file the first amended complaint within 30 days from a decision on this report and recommendation. If Pugh chooses not to file a first amended complaint curing the stated deficiencies, the Court will recommend dismissal of this action for failure to state a claim.

## V. CONCLUSION

For the reasons articulated above, the Court recommends that Pugh's application to proceed *in forma pauperis*, (ECF No. 1), be granted, and Pugh's complaint, (ECF No. 1-1), be dismissed without prejudice and with leave to amend.

Pugh is advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, Pugh may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Pugh's application to proceed *in forma pauperis*, (ECF No. 1), be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **FILE** Pugh's complaint, (ECF No. 1-1);

**IT IS FURTHER RECOMMENDED** that Pugh's complaint, (ECF No. 1-1), be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**;

**IT IS FURTHER RECOMMENDED** that if Pugh chooses to file a first amended complaint curing the deficiencies of her complaint, as outlined in this order, Pugh shall file the first amended complaint within **30 days** after a decision on the report and

recommendation. If Pugh chooses not to file a first amended complaint curing the stated deficiencies of the complaint, the Court will recommend that this action be dismissed for failure to state a claim.

**DATED**: June 29, 2026.

UNITED STATES MAGISTRATE JUDGE